Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
llankford@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 CASES |
| FRAC SPECIALISTS, LLC, | CASE NO. 15-41974-dml-11 |
| CEMENT SPECIALISTS, LLC, | CASE NO. 15-41975-rfn-11 |
| ACID SPECIALISTS, LLC, | CASE NO. 15-41976-dml-11 |
| DEBTORS. | **Joint Administration Pending** |
| | **Expedited Hearing Requested** |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS AUTHORIZING THE USE OF CASH
COLLATERAL AND GRANTING ADEQUATE PROTECTION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Frac Specialists, LLC ("Frac Specialists"), Cement Specialists, LLC ("Cement Specialists") and Acid Specialists, LLC ("Acid Specialists" and with Frac Specialists and Cement Specialists, the "Debtors" or the "Companies"), as debtors and debtors-in-possession, file this Motion (the "Motion") pursuant to Bankruptcy Rule 4001(b), for entry of interim and final orders

authorizing the use of cash collateral and granting adequate protection. In support of this

Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This

case and all related maters have been referred to this Court pursuant to 28 U.S.C. § 157. This

Motion constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (M) and (O).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On May 17, 2015 (the "Petition Date"), the Debtors filed voluntary petitions in this

Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.      The Debtors continue to manage and operate their businesses as debtors in

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner,

or committee has been appointed in these cases.

## ABOUT THE COMPANIES

4.      The Companies operate as a leading oilfield service provider serving the

exploration and production industry within the Permian Basin. The Companies' management

team is made up of well-seasoned oil and gas veterans who have capitalized on an opportunity

to bundle an array of mission-critical services to better serve their customers. The Companies

have successfully built a diversified platform that provides the highest quality of services at

competitive pricing. Since 2011, the Companies have grown from $17.1mm and $6.6mm in

revenue and EBITDA, respectively, to $204.1 million and $6.8 million in revenue and EBITDA,

respectively, in 2014. The dramatic decrease in U.S. oilfield service intensity starting in

December 2014 caused profit margins and net cash flow to drop dramatically in the 1st quarter

of 2015. The Companies believe that activity levels have hit bottom and are again on the rise.

The Companies are aggressively cutting operating expenses, becoming more efficient during

the downturn, and believes their profitability will return as these internal changes are implemented and the overall oil industry activity increases.

5.    Acid Specialists was founded in 2008 and provides acid and related chemical pressure pumping services to enhance and maintain production, typically in older, existing oil and gas wells. Acid Specialists currently has nine pumps, sixteen acid transports and a highly loyal and skilled team of operators. Acid Specialists owns the original 11.59 acre yard and office/shop facilities in Midland, Texas. The facility includes substantial office and shop space along with a 46,000 gallon HCL acid dock. This yard and shop are the base of operations for the combined approximately 280 employees of all three Debtor entities.

6.    Cement Specialists was founded in late 2010 and provides a complete range of cementing services including remedial work, squeeze jobs, production, intermediate and surface casing, liners and plug and abandonment services. Cement Specialists currently has four single pump cementers and three double pump cementers, along with ten bulk trailers, two field bins and other support equipment. In April 2013, Cement Specialists completed the construction of its state of the art cement plant that is located towards the rear of Acid Specialist's yard.

7.    Frac Specialists was founded in late 2011 and provides energized fluid fracs, slick water fracs, cross-linked fracs and gelled water fracs. Frac Specialists expanded steadily throughout 2012, 2013, and 2014 and is capable of pumping any frac design currently used in the Permian Basin. Its equipment is almost all late model (most of it purchased within the last two years), and can be divided into either two complete horizontal zipper frac crews (21 pumps each), or as many as four vertical frac crews (10 pumps each). Frac Specialists owns a 28 acre yard across the street from Acid Specialist's yard that has 4,000,000 tons of sand storage, along with 130,000 gallons of HCL acid storage, and a second facility in Snyder, Texas that consists of 22 acres in an industrial area that has rail access. Frac Specialists also leases a 30,000,000 ton sand storage facility with full rail unloading capabilities in Kress, Texas.

8.     The Companies currently operate exclusively in the Permian Basin, which is considered one of the most prolific oil plays in the United States and has become increasingly more attractive for large oil and gas drillers.  As of April 2015, the Permian Basin is the largest oil producing basin and the fourth largest gas producing basin in the United States at 1,981 Mbbls/day and 6,437 MMcf/day, respectively.  This represents a 71% increase and 47% increase in oil and gas production, respectively, from April 2012 levels.  Furthermore, the Permian Basin is reported to contain an estimated 30 Bbbl of remaining recoverable oil.  Along with the Eagle Ford Shale, the Permian Basin is expected to be the continued recipient of a large amount of upstream and midstream investment dollars when commodity prices rebound.

9.     The Companies have evolved into one of the leading service platforms in the Permian Basin, providing reliable high quality equipment and services at competitive prices. Before the fall in commodity prices, the Companies were experiencing accelerated growth with strong financial performance.  Due to heavy investments in capital assets and a subsequent decline in drilling operations in the Permian Basin, the Companies are now seeking the benefit of a Chapter 11 reorganization to create efficiencies, reorganize their debt and capital leases, and leverage their existing relationships and infrastructure to grow revenue and profits as the market improves.

10.     The Debtors are affiliated entities with common ownership.  Noble Natural Resources, LLC, Javier Urias and Alex Hinojos collectively own 100% of the membership interests in Acid Specialists and Cement Specialists and 55% of the membership interests in Frac Specialists.  The other 45% membership interest in Frac Specialists is held by Acid Specialists.

11.     In their Chapter 11 cases, the Debtors intend to implement a business strategy that will ensure the Debtors' financial stability.  The Debtors are evaluating their businesses and will prepare a proposed plan of reorganization to restructure the Debtors' prepetition obligations

and to provide equitable treatment for their secured and unsecured creditors. The Debtors will seek confirmation of their plan at the earliest practicable date.

## THE CAPITAL ONE INDEBTEDNESS

12.    The Debtors are obligated to Capital One, N.A. (the "Bank") pursuant to that certain Revolving Loan Promissory Note (as renewed, amended or modified, the "Note") dated September 19, 2014 providing Debtors with a revolving borrowing facility of up to $25 million. As of the Petition Date, the outstanding balance under the Note was approximately $7 million. The Note is subject to the terms of that certain Loan and Security Agreement between the Bank and Debtors dated as of September 19, 2014 (the "Loan Agreement).

13.    As provided in the Loan Agreement, the Note is secured by the Debtors' Accounts, Deposit Accounts, and Proceeds, all as defined therein (the "Prepetition Collateral"). Accordingly, the Bank likely asserts a security interest in certain of the Debtors' cash and cash equivalents on hand as of the Petition Date (the "Cash Collateral").

## EVENTS LEADING TO BANKRUPTCY

14.    Since January 2015, the Debtors have reduced their collective secured debt to the Bank from about $22 million to $7 million. Nevertheless, the Bank insisted that the Debtors pledge additional collateral to secure the indebtedness. The Debtors became concerned that the Bank intended to offset funds in the Debtors' operating accounts if the Debtors did not agree to pledge additional collateral to the Bank. These bankruptcy cases were filed in part as a preventative measure to preserve all assets, including working capital, for the benefit of all creditors and to provide the Debtors with sufficient cash reserves to successfully reorganize.

15.    In their Chapter 11 cases, the Debtors intend to implement a business strategy that will ensure the Debtors' financial stability. The Debtors are evaluating their businesses and will prepare a proposed plan of reorganization to restructure the Debtors' prepetition obligations and to provide equitable treatment for their secured and unsecured creditors. The Debtors will

seek confirmation of their plan at the earliest practicable date.

## RELIEF REQUESTED

16.     Pursuant to this Motion and section 363(c) of the Bankruptcy Code, the Debtors

seek interim and final orders authorizing the use of Cash Collateral (as defined below), in which

the Prepetition Lender asserts a security interest.  The Debtors request authority to use Cash

Collateral in accordance with the Budget attached hereto as **Exhibit "A"** (the "Budget") on an

interim basis, and in accordance with subsequent budgets hereafter approved by the Court on a

final basis.

17.     In addition, under sections 361 and 363(e) of the Bankruptcy Code, the Debtors

seek to grant adequate protection to the Prepetition Lender for any diminution of the value of the

Prepetition Collateral (as defined below) as a result of the use of Cash Collateral and the

imposition of the automatic stay through the issuance of a replacement lien in favor of the

Prepetition Lender on Cash Collateral generated post-petition.

18.     The relief requested herein is necessary to prevent immediate and irreparable

harm to the Debtors' chapter 11 estates and should provide sufficient funds, on an interim basis,

to permit the Companies to continue to operate their businesses and to satisfy their payroll and

other direct operating expenses.  The Debtors request approval for interim use of Cash

Collateral through June 1, 2015 on an interim basis (the "Interim Order") and thereafter on a

permanent basis (the "Final Order").

## BASIS FOR RELIEF

19.     The Debtors estimate that, as of the Petition Date, they held cash deposits in

various bank accounts totaling approximately $5 million and held receivables of approximately

$6 million.  As such, there exists significant equity in the Prepetition Collateral over and above

the Bank's claim of approximately $7 million.  Accordingly, the Bank is adequately protected by

its Prepetition Collateral.  Nevertheless, to the extent of any diminution in value in the Bank's

Cash Collateral occasioned by the Debtors' use of such Cash Collateral, the Debtors propose to grant the Bank replacement liens in cash generated post-petition.

20.    The Debtors asserts that the interest of the Bank in the Prepetition Collateral is adequately protected.  The Companies' continued use of the Prepetition Collateral maximizes the position of all of the Companies' creditors, including the Bank.  In the course of their operations, the Companies will sell inventory, collecting accounts receivable, and use the proceeds of the same to acquire new inventory, perform new services and pay operating expenses.  Such ongoing operations benefit the Bank in that new Cash Collateral is created.

21.    The Companies have no material source of income other than from their operations and the collection of their accounts receivable.  At the present time, an immediate and critical need exists for the Companies to be permitted access to funds in order to continue the operation of their businesses, to pay their employees, and to protect their ability to reorganize in accordance with chapter 11 of the Bankruptcy Code.

22.    Pursuant to section 363(c)(2)(B) of the Bankruptcy Code, the Debtors request that the Court authorize and approve the Companies' use of Cash Collateral for the payment of their operating expenses in accordance with the Budget and with subsequently approved budgets.  To remain in possession of their property, to continue the Companies' business activities, and to achieve a successful reorganization, the Debtors request use of Cash Collateral in the Companies' ordinary business operations.  The Debtors currently have no present alternative borrowing source from which the Debtors could secure additional funding to operate their businesses.  The Debtors believe that payment of operating expenses is reasonable and that such payment is for necessary business expenses which must be paid in order to continue the Companies' business operations.

23.    In the event the Court does not authorize the Debtors' proposed use of Cash Collateral, the Debtors believe that the Companies will be unable to maintain their current

business operations and to confirm a plan of reorganization as contemplated by the Bankruptcy Code.  Without the use of Cash Collateral, the Debtors will be seriously and irreparably harmed, resulting in significant losses to the Debtors' estates and their creditors.

24.    In filing this Motion, the Debtors do not admit that the Bank holds valid, perfected, enforceable or unavoidable prepetition liens and security interest in and to any of the Prepetition Collateral.  The Debtors do not waive the right to contest the validity, perfection, enforceability or avoidability of the Prepetition Lender's liens and security interests in and to the Prepetition Collateral.

## APPLICABLE AUTHORITY

25.    One of the Debtors' most pressing concerns is the need for immediate use of Cash Collateral pending a final hearing on this Motion.  Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of such motion.  *See* Fed.R.Bankr.P. 4001(b) and (c); 11 U.S.C. 363.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to the Debtors' estates.  The Debtors require use of Cash Collateral to pay present operating expenses, including payroll, and to pay vendors to ensure a continued supply of materials essential to the Companies' continued viability.

26.    The Debtors request immediate authority to use the Cash Collateral to fund the Companies' day-to-day operations.  Absent such relief, the Companies will not be able to continue to operate their businesses.  In sum, failure to obtain authorization for the use of the Cash Collateral will be disastrous to the Companies and their creditors.  Entry of an order authorizing the use of Cash Collateral will minimize disruption to the Companies' businesses

and operations and permit the Companies to meet payroll and other operating expenses. Absent use of the Cash Collateral, the Companies' estates would not have sufficient funds to satisfy their ongoing business obligations.  Allowing use of Cash Collateral, therefore, is in the best interest of the Debtors' estates.

27.     The use of Cash Collateral and the adequate protection proposed herein is fair and reasonable under the circumstances, reflects the Debtors' exercise of prudent business judgment, and is supported by reasonably equivalent value and fair consideration.  Also, the adequate protection proposed herein in the form of replacement liens, in addition to its existing liens in the Prepetition Collateral, is sufficient to protect the interests of the Prepetition Lender. As such, the Debtors should be afforded protection equivalent to those provided in section 364(e) of the Bankruptcy Code.

### LIMITED NOTICE

28.     Notice of this Motion has been provided to the office of the United States Trustee for the Northern District of Texas, the Bank, the holders of the twenty (20) largest unsecured claims against the Debtors, and parties filing a notice of appearance, as set forth in the Certificate of Service filed herewith.  Under the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, the Debtors submit that no other further notice need be provided.

### CONCLUSION

29.     The relief requested herein should ensure that the Debtors' chapter 11 estates have sufficient resources to commence their chapter 11 case and to provide a seamless transition to operating the Companies' businesses as a debtors-in-possession.  The Debtors request that the Court grant the Motion.

WHEREFORE, the Debtors respectfully request that the Court (i) grant the Motion; (ii) enter an Interim Order permitting the Debtors to use Cash Collateral consistent with the Budget; (iii) after a final hearing on this Motion, enter a Final Order permitting the Debtors to use of Cash

Collateral on a final basis as provided herein; (iv) grant the Prepetition Lender replacement liens in the Cash Collateral as provided herein; and (v) grant all such other and further relief as is just and proper.

Dated: May 17, 2015

Respectfully submitted,

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
Phone: (817) 877-8855
Fax: (817) 877-4151

PROPOSED COUNSEL
FOR THE DEBTORS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the office of the United States Trustee for the Northern District of Texas, the counsel for the Prepetition Lender, the holders of the twenty (20) largest unsecured claims against the Debtors, and parties filing a notice of appearance via ECF electronic Notice, if available, on May 17, 2015 and via United States Mail, first class postage prepaid, on May 18, 2015.

/s/ Lynda L. Lankford
Lynda L. Lankford

L:\JPROSTOK\Frac Specialists (C11) #5756\Motion to use Cash Collateral 5.17.15.docx

**Service List**
**Frac Specialists, et al.**
**#5756**

Frac Specialists, LLC
Attn: Larry P. Noble
PO Box 11342
Midland, TX 75028

Cement Specialists, LLC
Attn: Larry P. Noble
PO Box 11342
Midland, TX 75028

Acid Specialists, LLC
Attn: Larry P. Noble
PO Box 11342
Midland, TX 75028

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75242

Capital One, N.A.
Attn: Seth P. Allen
600 North Pearl, Suite 2500
Dallas, TX 75201

Capital One, N.A.
c/o Jason DuVall
Squire Patton Boggs (US) LLP
2000 McKinney Ave., Suite 1700
Dallas, TX 75201

Bank of the West, Trinity Div.
475 Sansome St., 19th Floor
San Francisco, CA 94111

Corporation Service Company,
as Representative
PO Box 2576
Springfield, IL 62708

EH National Bank
3100 Bristol St., Suite 150
Costa Mesa, CA 92626

First National Capital, LLC
1029 Highway 6 North, Suite 650-283
Houston, TX 77079

MB Financial Bank, N.A.
6111 North River Rd.
Rosemont, IL 60018

Noble Natural Resources, LLC
2033 Taylor Court
Flower Mound, TX 75028

Prime Alliance Bank
1868 S. 500 W.
Woods Cross, UT 84087

Signature Business Leasing LLC
225 Broadhollow Rd., Suite 132W
Melville, NY 11747

Summit Funding Group, Inc.
4680 Parkway Dr., Suite 300
Mason, OH 45040

Susquehanna Commercial Finance, Inc.
2 Country View Road, Suite 300
Malvern, PA 19355

Wells Fargo Equipment Finance, Inc.
733 Marquette Ave., Suite 700
Minneapolis, MN 55402

Karen Hood Tax Assessor Collector
Midland County Tax Office
PO Box 712
Midland TX 79702

Midland Central Appraisal District
4631 Andrews Highway
PO Box 908002
Midland, TX 79708-0002

Texas Comptroller of Public Accounts
PO Box 149348
Austin, TX 78714

ASK Industries, Inc.
Community National Bank
PO Box 1191
Midland, TX 79702

Catalyst Oilfield Services
PO Box 8485
Midland, TX 79708

Chemplex Advanced Materials, LLC
PO Box 203576
Dallas, TX 75320-3576

Diamond Fleet Parts
1925 W. 2nd
Odessa, TX 79763

Dragon Products, Ltd.
PO Box 3127
Beaumont, TX 77704-3127

Economy Polymers & Chemicals
PO Box 301668
Dallas, TX 75303-1668

Energy & Environmental Services
PO Box 14726
Oklahoma City, OK 73113

Forum Flow Equipment
Forum US, Inc.
PO Box 203440
Dallas, TX 75320-3440

IV Kings
PO Box 216
Andrews, TX 79714

Kendrick Oil Co.
PO Box 788
Friona, TX 79053

L & W Diesel Service
PO Box 4635
Odessa, TX 79760

L&O Xtreme Hauling, LLC
PO Box 1191
Midland, TX 79702

Pel-State Services
PO Box 95386
Grapevine, TX 76099-9734

Precision Hydraulic Technology, Inc.
PO Box 2232
Odessa, TX 79760

Soil Mender Products, LP
3071 Highway 86
Tulia, TX 79088

Sun Coast Resources, Inc.
PO Box 202603
Dallas, TX 75320

Texas Department of Transportation
135 Slaton Road
Lubbock, TX 79404

TSI Flow Products
TSI-Accounting
PO Box 38709
Houston, TX 77238

WadeCo Specialties, LLC
PO Box 60634
Midland, TX 79711

Warren Cat
Cat Commercial Accounts
PO Box 905229
Charlotte, NC 28290-5229

Allen Compressor Repair
PO Box 1530
Snyder, TX 79550

Bettico, Inc.
9515 Santa Clara Dr.
Fort Worth, TX 76116

Buzzi Unicem USA - Cement
15293 Collections Center Dr.
Chicago, IL 60693

Cemex
PO Box 730197
Dallas, TX 75373-0197

Double T Oilfield Service LLC
2606 Douglas
San Angelo, TX 76904

FleetPride, Inc.
PO Box 874118
Dallas, TX 75284-7118

G & A Fabrication
6200 E. Highway 80
Midland, TX 79706

Grand Services
PO Box 1946
Midland, TX 79702

GulfStream Services, Inc.
Dept. 3254
PO Box 123254
Dallas, TX 75312-3254

Keystone Oilfield Fabrication, LLC
1870 FM 407
Rhome, TX 76078

LaFarge North America Inc.
Dept. 2393
PO Box 122393
Dallas, TX 75312-2393

Lone Star Safety & Supply, Inc.
PO Box 29131
Dallas, TX 75229-0131

Mass Flow Technology, Inc.
3523 N. Highway 146
Baytown, TX 77520

Mudsmith
PO Box 50723
Midland, TX 79710

Oilfield Equipment Sales
5320 FM 902
Gainesville, TX 76240

T & T Transports Inc.
PO Box 872
Colorado City, TX 79512

Teletrac, Inc.
32472 Collection Center Dr.
Chicago, IL 60693-0324

TOC Trucking, LLC
3900 S. CR 1195
Midland, TX 79706

B-Line Filter & Supply Inc.
PO Box 4598
Odessa, TX 79760

CNR Chemical Division, Inc.
Energy Services Group, Inc.
Dept. 2494
Tulsa, OK 74182

Cooper Natural Resources
Energy Services Group, Inc.
Dept. 2494
Tulsa, OK 74182

Custom Chemical Services, LLC
PO Box 441
Santa Fe, TX 77510

Energy Products, Inc.
PO Box 9471
Tulsa, OK 74157

FC Pro, LLC
PO Box 677496
Dallas, TX 75267-7496

FSTI, Inc.
PO Box 716
San Antonio, TX 78293

GDL Industrial Electronic
PO Box 8409
Midland, TX 79708

Interstate Batteries
PO Box 60264
Midland, TX 79711

Reagent Chemical & Research, Inc.
PO Box 416228
Boston, MA 02241-6228

Rock Water Energy Solutions
Reef Services, LLC
Dept. 18703
PO Box 203187
Dallas, TX 75320

Salt and Light Energy Equipment LLC
1910 Pacific Ave., Suite 15300
Dallas, TX 75201

Salt & Light Energy Equipment LLC
c/o Godwin Lewis PC
Israel R. Silvas/Elisaveta Dolghih
Renaissance Tower
1201 Elm St., Suite 1700
Dallas, TX 75270-2041

Thomas Petroleum
Fuels, Lubricants, Chemicals
PO Box 677289
Dallas, TX 75267-7289

Titan Lansing Transloading, LLC
2117 Commerce Dr.
Levelland, TX 79336

Trinity Reserve, Inc.
PO Box 115
Argyle, TX 76226-9998

TRIinternational, Inc.
600 Stewart St., Suite 1801
Seattle, WA 98101

Valley Solvents & Chemicals
PO Box 18
Combes, TX 78535