Jeff P. Prostok
State Bar No. 16352500
Suzanne K. Rosen
State Bar No. 00798518
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
srosen@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 11 CASES |
| | ) |
| FRAC SPECIALISTS, LLC, | ) CASE NO. 15-41974-dml-11 |
| CEMENT SPECIALISTS, LLC, | ) CASE NO. 15-41975-dml-11 |
| ACID SPECIALISTS, LLC, | ) CASE NO. 15-41976-dml-11 |
| | ) |
| DEBTORS. | ) **Jointly Administered Under** |
| | ) **Case No. 15-41974-dml-11** |
| | ) |
| | ) **EXPEDITED HEARING REQUESTED** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO PAY
PREPETITION WAGES, EMPLOYEE BENEFITS, AND INSURANCE PREMIUMS**

TO THE HONORABLE D. MICHAEL LYNN, UNITED STATES BANKRUPTCY JUDGE:

Frac Specialists, LLC ("Frac Specialists"), Cement Specialists, LLC ("Cement Specialists") and Acid Specialists, LLC ("Acid Specialists" and with Frac Specialists and Cement Specialists, the "Debtors" or the "Companies"), as debtors and debtors-in-possession, file this motion for entry of an order authorizing the Debtors to pay prepetition wages, employee benefits, and insurance premiums (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.        The continued loyalty of a debtor's employees is a necessary component of any successful reorganization.  Under the best of circumstances, the filing of a chapter 11 petition is a stressful and uncertain time for a debtor's employees, most of whom are not familiar with the nuances that bankruptcy practitioners often take for granted.  Such stress and uncertainty often cause poor employee morale at a time when the debtor needs its employees to be most loyal. Moreover, many employees live paycheck to paycheck and will suffer immediate adverse consequences if they fail to receive their full compensation.

2.        Honoring the Prepetition Employee Obligations (defined below) will minimize the hardship that employees will certainly endure if payroll or benefits are interrupted and will provide comfort to employees that the reasonable expectations of compensation for services will be met.  As such, the Debtors seek to continue paying Prepetition Employee Obligations in the ordinary course and to direct the bank at which the Debtors maintain their employee-related accounts to receive, process, honor and pay all payroll and employee benefit related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable payroll check was issued.

3.        The relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.  A failure by the Debtors to honor their prepetition obligations to their employees, including the payment of prepetition compensation and employee benefits and maintaining appropriate workers' compensation and other insurance, may result in the loss by the Debtors of their employees at a time when they need them most.  Consequently, it is essential to the Debtors' continued operations that their employees receive assurance that they will receive all prepetition compensation and that there will be no interruption in either the Debtors' workers' compensation insurance or any other insurance maintained by the Debtors on behalf of themselves and their employees.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

5.      On May 17, 2015 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in these cases.

7.      The Companies operate as leading oilfield service providers serving the exploration and production industry within the Permian Basin. The Companies' management team is made up of well-seasoned oil and gas veterans who have capitalized on an opportunity to bundle an array of mission-critical services to better serve their customers. The Companies have successfully built a diversified platform that provides the highest quality of services at competitive pricing. Since 2011, the Companies have grown from $17.1mm and $6.6mm in revenue and EBITDA, respectively, to $196.7 million and $36.8 million in revenue and EBITDA, respectively, in 2014. The dramatic decrease in U.S. oilfield service intensity starting in December 2014 caused profit margins and net cash flow to drop dramatically in the 1st quarter of 2015. The Companies are aggressively cutting operating expenses, becoming more efficient during the downturn, and believe their profitability will return as these internal changes are implemented and the overall oil industry activity increases.

8.      Acid Specialists was founded in 2008 and provides acid and related chemical pressure pumping services to enhance and maintain production, typically in older, existing oil and gas wells. Acid Specialists currently has nine pumps, sixteen acid transports and a highly loyal and skilled team of operators. Acid Specialists owns the original 11.59 acre yard and

office/shop facilities in Midland, Texas. The facility includes substantial office and shop space along with a 46,000 gallon HCL acid dock. This yard and shop are the base of operations for the combined approximately 200 employees of all three Debtor entities.

9.     Cement Specialists was founded in late 2010 and provides a complete range of cementing services including remedial work, squeeze jobs, production, intermediate and surface casing, liners and plug and abandonment services. Cement Specialists currently has four single pump cementers and three double pump cementers, along with ten bulk trailers, two field bins and other support equipment. In April 2013, Cement Specialists completed the construction of its state of the art cement plant that is located towards the rear of Acid Specialist's yard.

10.     Frac Specialists was founded in late 2011 and provides energized fluid fracs, slick water fracs, cross-linked fracs and gelled water fracs. Frac Specialists expanded steadily throughout 2012, 2013, and 2014 and is capable of pumping any frac design currently used in the Permian Basin. Its equipment is almost all late model (most of it purchased within the last two years), and can be divided into either two complete horizontal zipper frac crews (21 pumps each), or as many as four vertical frac crews (10 pumps each). Frac Specialists owns a 28 acre yard across the street from Acid Specialist's yard that has 4,000,000 tons of sand storage, along with 130,000 gallons of HCL acid storage, and a second facility in Snyder, Texas that consists of 22 acres in an industrial area that has rail access. Frac Specialists also leases a 30,000,000 pounds sand storage facility with full rail unloading capabilities in Kress, Texas.

11.     The Companies currently operate exclusively in the Permian Basin, which is considered one of the most prolific oil plays in the United States and has become increasingly more attractive for large oil and gas drillers. As of April 2015, the Permian Basin is the largest oil producing basin and the fourth largest gas producing basin in the United States at 1,981 Mbbls/day and 6,437 MMcf/day, respectively. This represents a 71% increase and 47% increase in oil and gas production, respectively, from April 2012 levels. Furthermore, the Permian Basin is reported to contain an estimated 30 Bbbl of remaining recoverable oil. Along

with the Eagle Ford Shale, the Permian Basin is expected to be the continued recipient of a large amount of upstream and midstream investment dollars when commodity prices rebound.

12.     The Companies have evolved into leading service platforms in the Permian Basin, providing reliable high quality equipment and services at competitive prices. Before the fall in commodity prices, the Companies were experiencing accelerated growth with strong financial performance. Due to heavy investments in capital assets and a subsequent decline in drilling operations in the Permian Basin, the Companies are now seeking the benefit of a Chapter 11 reorganization to create efficiencies, reorganize their debt and capital leases, and leverage their existing relationships and infrastructure to grow revenue and profits as the market improves.

13.     The Debtors are affiliated entities with common ownership. Noble Natural Resources, LLC, Javier Urias and Alex Hinojos collectively own 100% of the membership interests in Acid Specialists and Cement Specialists and 55% of the membership interests in Frac Specialists. The other 45% membership interest in Frac Specialists is held by Acid Specialists.

14.     In their Chapter 11 cases, the Debtors intend to implement a business strategy that will ensure the Debtors' financial stability. The Debtors are evaluating their businesses and will prepare a proposed plan of reorganization to restructure the Debtors' prepetition obligations and to provide equitable treatment for their secured and unsecured creditors. The Debtors will seek confirmation of their plan at the earliest practicable date.

## RELIEF REQUESTED

15.     By this Motion, the Debtors seek authority, pursuant to sections 105(a) and 507(a) of the Bankruptcy Code, to pay outstanding Prepetition Employee Obligations with respect to employees of the Debtors, and to direct the bank at which the Debtors maintain their employee-related accounts to receive, process, honor and pay all payroll and employee benefit related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds

are available to honor all such payments, without regard to when the applicable check was issued. The Debtors also seek the entry of an order pursuant to section 105(a) and Fed. R. Bankr. P. 6003(b) authorizing them to continue paying any prepetition amounts due on certain of their insurance policies. The Debtors also seek entry of any other orders necessary to grant the relief requested.

### THE DEBTORS' PREPETITION EMPLOYEE OBLIGATIONS

16.     The Debtors collectively employ nearly two hundred (200) employees. Frac Specialists has approximately 125 employees, Cement Specialists has approximately 33 employees, and Acid Specialists has approximately 39 employees and one independent contractor. As of the Petition Date, the Debtors owed to their employees certain prepetition obligations, including without limitation, the following:  (a) amounts for wages, salaries, and other compensation; (b) reimbursable business expenses, (c) employee general welfare benefits, including health and life insurance benefits, (d) maintenance of workers' compensation insurance, (e) costs for employee drug testing, (f) payroll deductions, and (g) other miscellaneous employee expenses, all as more particularly described below (collectively, the "Prepetition Employee Obligations"). The Debtors request that they be authorized to pay such Prepetition Employee Obligations. The Debtors also request that Acid Specialists be authorized to pay the prepetition amount owed by Acid Specialists to a single independent contractor among the Prepetition Employee Obligations.

17.     The Debtors also seek authorization to pay any additional premiums that may be due on their general liability, property and casualty, and other insurance policies that may result from a premium audit to the extent such additional premiums were incurred prepetition (the "Prepetition Insurance Obligations"). The Debtors ability to continue paying their Prepetition Employee Obligations and Prepetition Insurance Obligations is necessary to avoid immediate and irreparable harm to the Debtors' business operations.

A. **Wages, Salaries, and Prepetition Compensation for an Independent Contractor**

18.     The Debtors' respective salaried and hourly employees are paid on a bi-weekly basis on every other Friday for time accruing for the fourteen (14) day period ending on the Saturday prior to the payday.  For example, for the pay period from Sunday, May 10, 2015 through Saturday, May 23, 2015, the Debtors' salaried and hourly employees are paid for that two week period on Friday, May 29, 2015.

*(i)      Frac Specialists*

19.     As of the Petition Date, Frac Specialists owed wages to its hourly employees for the May 29, 2015 payroll, which covers the pay period from May 10, 2015 to May 23, 2015, of approximately $219,595.59, including taxes.  Additionally, Frac Specialists owed wages to its salaried employees for the May 29, 2015 payroll (representing the May 10, 2015 to May 23, 2015 pay period) of approximately $25,309.91, including taxes.  None of Frac Specialists' hourly or salaried employees are owed in excess of $12,475 on account of prepetiton wages and salaries.[1]

*(ii)     Cement Specialists*

20.     As of the Petition Date, Cement Specialists owed wages to its hourly employees for the May 29, 2015 payroll, which covers the pay period from May 10, 2015 to May 23, 2015, of approximately $28,356.12, including taxes.  Additionally, Cement Specialists owed wages to its salaried employees for the May 29, 2015 payroll (representing the May 10, 2015 to May 23, 2015 pay period) of approximately $18,880.46, including taxes.  None of Cement Specialists' hourly or salaried employees are owed in excess of $12,475 on account of prepetiton wages and salaries.

*(iii)    Acid Specialists*

21.     As of the Petition Date, Acid Specialists owed wages to its hourly employees for the May 29, 2015 payroll, which covers the pay period from May 10, 2015 to May 23, 2015, of

---

[1] *See* 11 U.S.C. § 507(a)(4).

approximately $47,747.76, including taxes. Additionally, Acid Specialists owed wages to its salaried employees for the May 29, 2015 payroll (representing the May 10, 2015 to May 23, 2015 pay period) of approximately $21,145.37, including taxes. None of Cement Specialists' hourly or salaried employees are owed in excess of $12,475 on account of prepetiton wages and salaries.

22.     Acid Specialists also utilizes the services of a single independent contractor. The independent contractor is an individual who manages safety for Acid Specialists and receives $1,827 every two weeks on the same payroll schedule as the Debtors' employees, plus a $600 per month living allowance. As of the Petition Date, Acid Specialists owed compensation to this independent contractor for the May 29, 2015 payroll, which covers the pay period from May 10, 2015 to May 23, 2015, of approximately $1,044. Because he manages safety for Acid Specialists, the Debtors view his services as essential to Acid Specialists' continued business operations.

23.     Like the Debtors' regular employees, the independent contractor also relies on Acid Specialists to compensate him for his services and may encounter financial hardship in the event the amount due to him for prepetition services is not paid. Consequently, the Debtors seek authorization for Acid Specialists to pay the prepetition amount of $1,044 to its independent contractor as part of the Prepetition Employee Obligations to avoid any hardship to the independent contractor and so that his reasonable expectation of compensation for services will be met. The Debtors also request that Acid Specialists be authorized to continue paying the independent contractor in the ordinary course.

*(iv)     **Pending Payments from Necessary Adjustment to the May 15, 2015 Payroll***

24.     In addition to the Debtors' payroll obligations for the May 29, 2015 payroll, the Debtors also had to make adjustments to their May 15, 2015 payroll, which covered the pay period from April 26, 2015 to May 9, 2015, in the amount of approximately $2,189. These adjustments were necessary to pay the correct amount of wages owed to certain hourly

employees. The Debtors made the payment as necessary to correct their payroll obligations prior to the Petition Date, however, these payments are currently "pending" with the Debtors' bank and have not been authorized to clear. Consequently, in addition to the prepetition amounts included in the Debtors' May 29, 2015 payroll, the Debtors also request that they be authorized to pay the adjustment required to correct their May 15, 2015 payroll.

25.      Accordingly, the Debtors seek authorization to pay their respective prepetition wages, salaries and other compensation, and any related payroll tax obligations, to their respective hourly and salaried employees described above, as well as authorization for Acid Specialists to pay the prepetition amount owed to its sole independent contractor.

**B.      Reimbursable Business Expenses**

26.      Prior to the Petition Date and in the ordinary course of its business, the Debtors reimbursed their respective employees for certain business expenses incurred in the ordinary course of their employment. This includes expenses relating to, among other things, business related travel expenses, business meals, and a variety of miscellaneous expenses (the "Reimbursable Expenses").

27.      All of the Reimbursable Expenses were incurred on the Debtors' behalf in connection with employment by the Debtors and in reliance upon the understanding that such expenses would be reimbursed by the particular Debtor on whose behalf the expenses were incurred. As of the Petition Date, the total amount owed by each of the Debtors for Reimbursable Expenses is estimated to be no more than $7,500. Further, no one employee of any of the Debtors is estimated to receive in excess of $1,750 for Reimbursable Expenses. Accordingly, the Debtors seek authority to pay their respective Reimbursable Expenses in the ordinary course of business.

28.      In addition, certain of the Debtors' employees are provided with credit and/or charge cards for the purpose of paying business-related expenses (the "Business Expense Cards"). As is the usual case with such charge accounts, each holder of a charge card remains

personally liable for any amounts not paid by the Debtors. The Debtors typically pay approximately $1,500 per month for charges relating to their employees' use of Business Expense Cards. The Debtors estimate that no more than $1,500 may be owed on account of prepetition charges made by the Debtors' employees on the Business Expense Cards. The Debtors seek authority to pay their respective remaining obligations arising on account of the Business Expense Cards and incurred for the benefit of the Debtors, consistent with prior practices, to relieve the burden that would be placed on the Debtors' individual employees should the Debtors fail to pay the amounts accrued but unpaid as of the Petition Date. Accordingly, the Debtors seek authority to pay the amounts due on their respective Business Expense Cards in the ordinary course of business.

C.     **Employee General Welfare Benefits**

29.     As is common with most businesses, the Debtors provide their employees with various general welfare benefits, such as health insurance (medical, dental, vision, life and accidental death and dismemberment), vacation, holiday, and sick pay, and other benefits (the "Employee Benefits"). These additional benefits are an integral and essential component of each employee's total compensation package and are described in greater detail below with estimates of any prepetition amounts attributable to such benefits. Temporary or permanent cessation of such additional benefits would drastically disrupt the overall morale of the employees and would hinder the Debtors' reorganization efforts. Consequently, the Debtors request authority to pay any prepetition amounts attributable to such Employee Benefits – as further described below – as and when such amounts become due.

(i)     *Employee Medical and Health-Related Insurance*

30.     The Debtors provide their respective employees with various health insurance benefits. The Debtors provide medical insurance coverage through Blue Cross and Blue Shield ("BCBS"), and dental, vision, life, and accidental death and dismemberment insurance (the "Health Insurance") through Guardian. The premiums paid by the Debtors to BCBS for medical

insurance are approximately $80,451.98 per month for Frac Specialists, $24,271.77 per month for Cement Specialists, and $26,914.13 per month for Acid Specialists. With regard to their Health Insurance package, the Debtors pay Guardian a monthly combined premium of between approximately $18,000 and $20,000.[2] The premiums are paid monthly for the current month's coverage period, with the premium payments to Blue Cross and Blue Shield being due on the 10th of the month, and the payment to Guardian being due on the 1st of the month. For example, the premiums for May 2015 were due and payable on May 10, 2015 and May 1, 2015, respectively. The Debtor believes that it is current on all such payments; however, to the extent that any premiums remain unpaid as of the Petition Date or any portion of the current month's payment may be characterized as a prepetition obligation, the Debtors request that they be authorized, but not directed, to pay their pro rata portion of any prepetition amounts, including honoring any checks issued prepetition but not cleared as of the Petition Date.

### (ii)   Accrued Paid Leave

31.     Depending on an employee's tenure with the Debtors, certain of the Debtors' employees are permitted to take paid vacation. In addition to vacation pay, certain employees are entitled to sick leave and holiday pay. Certain employees may have accrued paid vacation and sick leave based upon work performed prepetition. By this Motion, the Debtors request authority to permit such employees to use any accrued paid vacation and sick days post-petition.

### D.     Drug Testing Expenses

32.     Many of the Debtors' customers require that the Debtors' employees be drug tested to determine and ensure safety compliance. The Debtors therefore require that certain of their employees be drug tested, and pay the costs associated with such drug testing for them.

---

[2] The Debtors' combined monthly premium was $18,129.34 for April 2015, and $19,429.01 for May 2015. The premium for the Health Insurance is generally paid by Frac Specialists, which is then reimbursed by Cement Specialists and Acid Specialists as an intercompany expense depending upon the costs associated with their respective employees covered by such Health Insurance.

As of the Petition Date, the Debtors owed approximately $3,860 pertaining to employee-related drug screening expenses ($2,760 for Frac Specialists; $340 for Cement Specialists; and $760 for Acid Specialists).  The drug testing is performed by Drug Screen Compliance, the specific company required by ISNetworld, which is an online contractor management database that collects health and safety, procurement, quality and regulatory information to meet internal and governmental record keeping and compliance requirements.

33.    Because many of the Debtors' customers use ISNetworld to determine safety compliance, it is critical to the Debtors' continued business operations that they remain approved in ISNetworld.  Indeed, if the Debtors could not continue to use Drug Screen Compliance, and were no longer approved in ISNetworld, they could lose or miss out on substantial business opportunities.  Consequently, the Debtors seek authorization to pay the prepetition amounts due for employee drug screening, and to continue paying such expenses in the ordinary course.

**E.    Workers' Compensation Insurance**

34.    In the ordinary course of business, the Debtors carry workers' compensation insurance through Texas Mutual.  The aggregate monthly premium paid by the Debtors for such workers' compensation insurance varies depending on the amount of man-hours worked and can vary between $20,000 and $30,000.  The monthly premium is generally paid by Frac Specialists, which is then reimbursed by Cement Specialists and Acid Specialists as an intercompany expense based on the actual wages and classification of their respective employees.  The Debtors' workers' compensation insurance is paid in arrears on the 15th of the following month.  As of the Petition Date, the Debtors had not yet paid their workers' compensation insurance for April, 2015.  The Debtors' workers' compensation insurance for May 2015, and due on June 15, 2015, will also include the prepetition period from May 1, 2015 through May 16, 2015.  To avoid potential disruption of any benefits to its employees, the Debtors request that they be authorized, but not directed, to (i) pay the current premium due in

May 2015 that is attributable to the April 2015 policy period, (ii) pay any portion of the May 2015 premium (due in June 2015) that is attributable to any period prior to the Petition Date, and (iii) to pay the premiums as they become due in the ordinary course of business.

**F.     Withholding from Employee Paychecks**

35.     Certain of the benefits that the Debtors offer their employees involve payroll deductions as employee contributions (collectively, the "Employee Deductions").  In such cases, the Debtors make deductions from their respective employee's paycheck and subsequently pays those funds, along with any required employer contributions, to the appropriate third party. The Employee Deductions comprise property of the employees and are not property of the Debtors or their bankruptcy estates.  In addition, in the ordinary course of business, the Debtors deduct from their respective employee's payroll monies relating to federal, state and local tax withholdings and garnishments, child support payments, etc. (together with the Employee Deductions, the "Deductions").  Consequently, the Debtors request authority to pay over to the appropriate parties all such Deductions withheld prior to the Petition Date, in accordance with existing company policies and procedures and applicable law.[3]

**THE DEBTORS' PREPETITION INSURANCE OBLIGATIONS**

36.     The Debtors also maintain comprehensive general liability, umbrella, property and casualty, and employee liability insurance.  The general liability and employee liability insurance insure the Debtors and their respective employees against the claims of third parties. The foregoing policies are maintained with Travelers, and the current coverage period is from July 10, 2014 through July 9, 2015.  The Debtors pay an aggregate annual premium of $1,162,000 on account of these Liability Policies, of which twenty-five percent (25%) was paid at the time of binding coverage, and the remainder was paid in nine monthly payments.  The Debtors' premium for their Liability Policies has been fully paid, subject to any adjustment

---

[3] The Debtors reserve the right to assert and establish that such funds have been held by the Debtors in constructive trust in the event the relief requested relating to the Deductions is not granted.

resulting from a premium audit by Travelers.

37.     The Debtors also carry an inland marine policy with RLI. The Debtors' current coverage period under their inland marine policy is also July 10, 2014 through July 9, 2015. The Debtors pay an aggregate annual premium of $206,000 on account of their inland marine policy, of which twenty-five percent (25%) was paid at the time of binding coverage, and the remainder was paid in nine monthly payments. The Debtors' premium for their inland marine policy has also been fully paid, subject to any adjustment resulting from a premium audit by RLI.

38.     It is critical to the Debtors' efforts to maintain current operations to assure the employees that sufficient liability and property and casualty insurance remains in place. As of the Petition Date, the Debtors believe that they are current on their Insurance Policies. However, to the extent any additional insurance premiums may be due following a premium audit pertaining to the prepetition portion of the coverage period, the Debtors request that they be authorized, but not directed, to pay their respective portion of any outstanding prepetition insurance premiums based on an estimate of their respective projected payroll or revenues so that they may maintain coverage for themselves and their employees.

**Miscellaneous**

39.     The Debtors may determine that there are additional *de minimis* prepetition obligations, which have not been identified in the Motion. Accordingly, the Debtors request authority to pay any such additional obligations up to an aggregate amount of $5,000 for each of the Debtors upon five (5) business days' prior written notice to counsel to any statutory creditors' committee and the United States Trustee, setting forth the nature and amount of the additional obligation sought to be paid.

40.     If an objection is filed within such five-day period, and such objection is not resolved consensually, the Debtors will seek authority from the Court to make such payment. The Debtors reserve the right to seek authority from the Court to pay any obligations in excess of the aforementioned limit.

## BASIS FOR RELIEF

41.     Section 507(a) of the Bankruptcy Code provides that the vast majority of

Prepetition Employee Obligations, subject to certain conditions, are afforded priority distribution

up to $12,475. *See* 11 U.S.C. § 507(a)(4).  Moreover, section 507(a)(4) priority claims are

entitled to payment in full under a chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(B).  Accordingly,

as the Debtors' employees may be entitled to a priority distribution for prepetition amounts

owed, the relief requested herein should primarily affect the timing of payment of employee

claims rather than their treatment for distribution purposes, and should neither prejudice general

unsecured creditors nor materially affect the Debtors' bankruptcy estate.

42.     Additionally, under section 105(a) of the Bankruptcy Code, courts have permitted

post-petition payment of prepetition obligations where necessary to preserve or enhance the

value of a debtor's estate for the benefit of all creditors.  *In re Tusa-Expo Holdings, Inc.*, 2008

Bankr. LEXIS 2852, *6-11 (Bankr. N.D. Tex. 2008); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 n.

17 (Bankr. N.D.Tex. 2002); s*ee also, In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D.La. 1989).

43.     The Debtors' employees are an essential component of a successful bankruptcy.

Many of the employees live from paycheck to paycheck, relying exclusively on receiving their

full compensation to pay their daily living expenses.  Furthermore, many of the Debtors'

employees rely on their employee benefits, such as health insurance, without which they would

be forced to pay for or go without insurance coverage for themselves and their families.  Finally,

the Debtors' employees depend upon them to provide workers' compensation insurance and

pay the costs associated with employee drug testing.  As a result, these employees will be

exposed to significant financial hardship and health-related problems if the Debtors are not

permitted to honor the unpaid Prepetition Employee Obligations, likely impairing employee

morale and welfare at this critical time.

44.     Amounts withheld from employees' paychecks represent, in many cases,

employee earnings specifically designated by employees, or, in the case of garnishments, by

judicial authorities, to be deducted from employee paychecks and paid accordingly. The failure to make these payments will result in hardship to certain employees. Moreover, if the Debtors are unable to remit certain of these amounts, the employees could face legal action and/or imprisonment.

45.     To give effect to the requested relief, the Debtors request that the Court provide specific authorization and direction to the bank at which the Debtors maintain their respective employee-related accounts to receive, process, honor and pay all payroll and employee benefit related checks, drafts, wires, or automated clearing house transfers, provided sufficient funds are available to honor all such payments, without regard to when the applicable check was issued.

46.     In addition, because the services of a single individual independent contractor is critical to Acid Specialists' continued operations, the Debtors also believe that the payment of the prepetition amount owed to this individual will benefit, rather than prejudice, the Debtors' other unsecured creditors. The Debtors also do not believe that the payment of $1,044 to the independent contractor will materially affect the Debtors' bankruptcy estates.

47.     To give effect to the requested relief, the Debtors request that the Court provide specific authorization and direction to the bank at which Acid Specialists maintains its account used to pay prepetition obligations to the independent contractor to receive, process, honor and pay all checks, drafts, wires, or automated clearing house transfers made on account of the prepetition payment obligations owed to the independent contractor, provided sufficient funds are available to honor all such payments, without regard to when the applicable payroll check was issued.

48.     In addition, it is critical to the Debtors' operations for them to maintain employee health and life insurance, workers' compensation insurance, general liability, property and casualty, and other insurance policies. The medical, health, life, workers' compensation, and employee liability insurance are necessary for the welfare of the Debtors' employees. The

general liability insurance is required for the Debtors to be able to continue operating their vehicles and equipment. The property and casualty and inland marine insurance are required by the Debtors' lenders or lessors and are necessary to preserve the value of any equipment or other movable property. Such insurance also protects the value of the Debtors' property and insures the Debtors and their employees against the claims of third parties. The absence of any one of these policies would be detrimental to the Debtors' businesses, creditors, and bankruptcy estates. Consequently, the Debtors request that they be authorized, but not directed, to pay their respective Prepetition Insurance Obligations.

49. The Debtors submit that the total amount to be paid to the employees and for the insurance if the requested relief is granted is *de minimis* compared with the importance and necessity of the employees to the Debtors and the insurance to the Debtors' operations. Accordingly, the relief sought herein is in the best interests of the Debtors' estates and creditors and will allow the Debtors to continue to operate their businesses with minimal disruption and proceed with the important task of stabilizing its operations.

## LIMITED NOTICE

1. Notice of this Application has been provided to (i) the Office of the United States Trustee for the Northern District of Texas; (ii) counsel for Capital One; (iii) the holders of the twenty (20) largest unsecured claims against the Debtors; and (iv) parties requesting notice; all as set forth below. The Debtors submit that no further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order granting (i) the relief requested herein and (ii) such other and further relief as is just and proper.

Dated: May 22, 2015.                     Respectfully submitted,

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
Suzanne K. Rosen
State Bar No. 00798518

FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
Telephone: (817) 877-8855
Facsimile:  (817) 877-4151
jprostok@forsheyprostok.com
srosen@forsheyprostok.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon the parties listed on the attached service list via United States Mail, first class postage prepaid, or via ECF electronic Notice, if available, on May 22, 2015.

/s/ Suzanne K. Rosen
Suzanne K. Rosen

L:\JPROSTOK\Frac Specialists (C11) #5756\Pleadings\Mtn for Order Approving Payment of Pre-Petition Wages and Insurance 5.22.15.docx

**Service List**
**Frac Specialists, et al.**
**#5756**

Frac Specialists, LLC
Attn: Larry P. Noble
PO Box 11342
Midland, TX 75028

Cement Specialists, LLC
Attn: Larry P. Noble
PO Box 11342
Midland, TX 75028

Acid Specialists, LLC
Attn: Larry P. Noble
PO Box 11342
Midland, TX 75028

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75242

Capital One, N.A.
Attn: Seth P. Allen
600 North Pearl, Suite 2500
Dallas, TX 75201

Capital One, N.A.
c/o Jason DuVall
Squire Patton Boggs (US) LLP
2000 McKinney Ave., Suite 1700
Dallas, TX 75201

Bank of the West, Trinity Div.
475 Sansome St., 19th Floor
San Francisco, CA 94111

Corporation Service Company,
as Representative
PO Box 2576
Springfield, IL 62708

EH National Bank
3100 Bristol St., Suite 150
Costa Mesa, CA 92626

First National Capital, LLC
1029 Highway 6 North, Suite 650-283
Houston, TX 77079

MB Financial Bank, N.A.
6111 North River Rd.
Rosemont, IL 60018

Noble Natural Resources, LLC
2033 Taylor Court
Flower Mound, TX 75028

Prime Alliance Bank
1868 S. 500 W.
Woods Cross, UT 84087

Signature Business Leasing LLC
225 Broadhollow Rd., Suite 132W
Melville, NY 11747

Summit Funding Group, Inc.
4680 Parkway Dr., Suite 300
Mason, OH 45040

Susquehanna Commercial Finance, Inc.
2 Country View Road, Suite 300
Malvern, PA 19355

Wells Fargo Equipment Finance, Inc.
733 Marquette Ave., Suite 700
Minneapolis, MN 55402

Karen Hood Tax Assessor Collector
Midland County Tax Office
PO Box 712
Midland TX 79702

Midland Central Appraisal District
4631 Andrews Highway
PO Box 908002
Midland, TX 79708-0002

Texas Comptroller of Public Accounts
PO Box 149348
Austin, TX 78714

## TWENTY LARGEST UNSECURED CREDITORS

ASK Industries, Inc.
Community National Bank
PO Box 1191
Midland, TX 79702

Catalyst Oilfield Services
PO Box 8485
Midland, TX 79708

Chemplex Advanced Materials, LLC
PO Box 203576
Dallas, TX 75320-3576

Diamond Fleet Parts
1925 W. 2nd
Odessa, TX 79763

Dragon Products, Ltd.
PO Box 3127
Beaumont, TX 77704-3127

Economy Polymers & Chemicals
PO Box 301668
Dallas, TX 75303-1668

Energy & Environmental Services
PO Box 14726
Oklahoma City, OK 73113

Forum Flow Equipment
Forum US, Inc.
PO Box 203440
Dallas, TX 75320-3440

IV Kings
PO Box 216
Andrews, TX 79714

Kendrick Oil Co.
PO Box 788
Friona, TX 79053

L & W Diesel Service
PO Box 4635
Odessa, TX 79760

L&O Xtreme Hauling, LLC
PO Box 1191
Midland, TX 79702

Pel-State Services
PO Box 95386
Grapevine, TX 76099-9734

Precision Hydraulic Technology, Inc.
PO Box 2232
Odessa, TX 79760

Soil Mender Products, LP
3071 Highway 86
Tulia, TX 79088

Sun Coast Resources, Inc.
PO Box 202603
Dallas, TX 75320

Texas Department of Transportation
135 Slaton Road
Lubbock, TX 79404

TSI Flow Products
TSI-Accounting
PO Box 38709
Houston, TX 77238

WadeCo Specialties, LLC
PO Box 60634
Midland, TX 79711

Warren Cat
Cat Commercial Accounts
PO Box 905229
Charlotte, NC 28290-5229

Allen Compressor Repair
PO Box 1530
Snyder, TX 79550

Bettico, Inc.
9515 Santa Clara Dr.
Fort Worth, TX 76116

Buzzi Unicem USA - Cement
15293 Collections Center Dr.
Chicago, IL 60693

Cemex
PO Box 730197
Dallas, TX 75373-0197

Double T Oilfield Service LLC
2606 Douglas
San Angelo, TX 76904

FleetPride, Inc.
PO Box 874118
Dallas, TX 75284-7118

G & A Fabrication
6200 E. Highway 80
Midland, TX 79706

Grand Services
PO Box 1946
Midland, TX 79702

GulfStream Services, Inc.
Dept. 3254
PO Box 123254
Dallas, TX 75312-3254

Keystone Oilfield Fabrication, LLC
1870 FM 407
Rhome, TX 76078

LaFarge North America Inc.
Dept. 2393
PO Box 122393
Dallas, TX 75312-2393

Lone Star Safety & Supply, Inc.
PO Box 29131
Dallas, TX 75229-0131

Mass Flow Technology, Inc.
3523 N. Highway 146
Baytown, TX 77520

Mudsmith
PO Box 50723
Midland, TX 79710

Oilfield Equipment Sales
5320 FM 902
Gainesville, TX 76240

T & T Transports Inc.
PO Box 872
Colorado City, TX 79512

Teletrac, Inc.
32472 Collection Center Dr.
Chicago, IL 60693-0324

TOC Trucking, LLC
3900 S. CR 1195
Midland, TX 79706

B-Line Filter & Supply Inc.
PO Box 4598
Odessa, TX 79760

CNR Chemical Division, Inc.
Energy Services Group, Inc.
Dept. 2494
Tulsa, OK 74182

Cooper Natural Resources
Energy Services Group, Inc.
Dept. 2494
Tulsa, OK 74182

Custom Chemical Services, LLC
PO Box 441
Santa Fe, TX 77510

Energy Products, Inc.
PO Box 9471
Tulsa, OK 74157

FC Pro, LLC
PO Box 677496
Dallas, TX 75267-7496

FSTI, Inc.
PO Box 716
San Antonio, TX 78293

GDL Industrial Electronic
PO Box 8409
Midland, TX 79708

Interstate Batteries
PO Box 60264
Midland, TX 79711

Reagent Chemical & Research, Inc.
PO Box 416228
Boston, MA 02241-6228

Rock Water Energy Solutions
Reef Services, LLC
Dept. 18703
PO Box 203187
Dallas, TX 75320

Salt and Light Energy Equipment LLC
1910 Pacific Ave., Suite 15300
Dallas, TX 75201

Salt & Light Energy Equipment LLC
c/o Godwin Lewis PC
Israel R. Silvas/Elisaveta Dolghih
Renaissance Tower
1201 Elm St., Suite 1700
Dallas, TX 75270-2041

Thomas Petroleum
Fuels, Lubricants, Chemicals
PO Box 677289
Dallas, TX 75267-7289

Titan Lansing Transloading, LLC
2117 Commerce Dr.
Levelland, TX 79336

Trinity Reserve, Inc.
PO Box 115
Argyle, TX 76226-9998

TRIinternational, Inc.
600 Stewart St., Suite 1801
Seattle, WA 98101

Valley Solvents & Chemicals
PO Box 18
Combes, TX 78535

## NOTICE OF APPEARANCE AND REQUEST FOR NOTICE PARTIES

Capital One, N.A.
c/o Courtney S. Lauer
Gordon, Arata, McCollam, et al.
1980 Post Oak Blvd., Suite 1800
Houston, TX 77056

Capital One, N.A.
c/o Louis M. Phillips
Gordon, Arata, McCollam, et al.
One American Place
301 Main St., Suite 1600
Baton Rouge, LA 70801-1916

Kendrick Oil Company
c/o John Massouh
Sprouse Shrader Smith PLLC
701 S. Taylor, Suite 500
PO Box 15008
Amarillo, TX 79105-5008

Community National Bank
c/o Michael G. Kelly
Kelly Morgan Dennis, et al.
PO Box 1311
Odessa, TX 79760-1311

Bank of the West
c/o Thomas Scannell
Gardere Wynne Sewell LLP
1601 Elm St., Suite 3000
Dallas, TX 75201

Texas Comptroller of Public Accounts
c/o Jason A. Starks, Asst. Attorney General
Bankruptcy & Collections Div. MC 008
PO Box 12548
Austin, TX 78711-2548

TSI Flow Products
c/o George A. Kurisky, Jr.
Johnson DeLuca Kurisky & Gould, PC
4 Houston Center
1221 Lamar, Suite 1000
Houston, TX 77010

CIT Finance, LLC
c/o Brent R. McIlwain/Alvin F. Benton, Jr.
Holland & Knight LLP
200 Crescent Court, Suite 1600
Dallas, TX 75201

Wells Fargo Equipment Finance, Inc.
c/o Larry Chek
Palmer & Manuel, LLP
8350 N. Central Expressway, Suite 1111
Dallas, TX 75206

Van Zandt Supply, Ltd. dba VZ Environmental
c/o Robert A. Simon
Whitaker Chalk Swindle & Schwartz, PLLC
301 Commerce St., Suite 3500
Fort Worth, TX 76102